CHARLES S. BARTON and FANNIE A. BARTON

*v.*

LEVI K. SLIFER.

[Submitted April 15th, 1907. Decided April 17th, 1907.]

1. Where an owner of land lays it out into streets and lots, and adopts a restrictive covenant as to the building line, and inserts the covenant in all deeds as an exaction from all purchasers for the benefit of each, the equitable right to enforce the covenant enures to each purchaser, irrespective of when he purchased.

2. Complainants showed a right to enforce a restrictive building covenant where their bill averred the purchase of the original tract of land by an association, its subdivision into lots, the adoption of a general building scheme to secure an unobstructed view, &c., to the lot purchasers, the adoption of the restrictive covenant, and its insertion in all deeds made by the association.

3. Where the deeds to all lots in a town contained a uniform restrictive building covenant, complainants' right to enforce it against a neighboring owner was not lost because there had been several violations of the covenant, where the violations in no substantial way affected their property, and did not show any intention to abandon the general plan in the district wherein the parties' property was located.

4. Complainants were not estopped by laches to enforce a restrictive building covenant where, when defendant attempted to violate it, they promptly notified the foreman of the work that their rights were being violated, and where a bill was thereafter filed as quickly as it could be procured.

On bill for injunction.

The bill is filed by complainants to restrain defendant from the erection of a building in violation of the following restrictive building covenant:

"And also under and subject to the express conditions and restrictions that no building of any description whatever shall at any time be erected within ten feet of the front line of said avenue, nor within four feet of the side lines of said lot (excepting where a party may own two or more contiguous lots, then a building may be erected on any part of the lot or

lots the owner thereof may desire, without regard to the intervening line or lines, provided the same is not built within four feet of the outside lines of said lots, nor within ten feet of the front lines thereof), and also that no building, or any part thereof, erected upon the said lot or lots, shall be used or occupied as a livery or sales stable, dye-house, bone-boiling or skin-dressing establishment, soap, candle, glue, starch, lamp-black, poudrette or fish guano manufactory, slaughter-house, piggery or tannery. Nor shall any building be used or occupied as a drug store, without the written consent of the said party of the first part hereto."

The act sought to be enjoined consists of the violation of that part of the covenant prohibiting the erection of a building within four feet of the side line of defendant's lot.

In the year 1879 the tract of land which now comprises Ocean City, Cape May county, was a wild beach and was purchased by the Ocean City Association and laid out in streets and lots with a view to the establishment of a Christian seaside resort. To that end the covenant in question, with other covenants, was adopted by the association and inserted in all deeds made by it as a part of a general scheme adopted by it for the benefit of the entire tract with the purpose of securing, among other things, a space of at least eight feet between all buildings to afford light, air, view and fire protection.

The lot now owned by complainants was conveyed by the Ocean City Association to John C. Lake, by deed dated February 3d, 1885. The lot now owned by defendant was conveyed by the Ocean City Association to Jacob B. Graw, by deed dated July 21st, 1886. The deed held by defendant expressly recites that the conveyance is subject to the operation of the covenant above referred to. ·

The northeasterly line of Ninth street forms the southwesterly side line of the two lots in question, and the lot owned by defendant is next oceanward of that owned by complainants.

A building has been erected on the lot owned by complainants, and that building is located on the lot in conformity to the requirements of the covenant. The proposed building of defendant, if erected of the width intended, will operate to obstruct the view and air to complainants' lot to a greater degree than would be the case if the building should be erected in conformity to the restrictive covenant.

This cause has been heard, at the return of an order to show cause for a preliminary injunction, on amended bill and affidavits and answering affidavits.

*Messrs. Bourgeois & Sooy,* for the complainants.

*Messrs. Thompson & Cole,* for the defendant.

LEAMING, V. C.

When an owner of a tract of land lays it out into streets and lots and adopts a restrictive covenant of the nature of the one now in question with a view to secure the defined conditions named in the covenant for the benefit of the entire tract which he seeks to develop, and inserts the covenant in all deeds as a part of the defined scheme and as an exaction from all purchasers for the benefit of each purchaser, the equitable right to the enforcement of the covenant enures to each purchaser irrespective of the time of his purchase. Under the conditions named the benefit to be derived from the covenant as a part of the general scheme necessarily enters into the consideration of each purchase, although the covenant may, in terms, only bind each purchaser and his heirs and assigns.

It is urged on behalf of defendant that the present amended bill and annexed affidavits do not afford sufficient evidence of the conditions above stated to warrant the issuance of the preliminary writ sought. While the amended bill and affidavits annexed to it are not as explicit in details as might be desired, I entertain the view that the averments are sufficient to bring complainants' case within the rule stated. The amended bill shows the purchase of the original tract by the Ocean City Association and its subdivision into lots for sale and the preparation and filing of a map showing the lots thus defined and the adoption by that corporation of "a general building scheme for the purpose of securing the unobstructed view and light and air," and the adoption of the restrictive covenant now in question and the insertion of that covenant in all deeds which have been executed by the corporation. The affidavit of S. Wesley Lake, an-

nexed to the amended bill, sets forth that the corporation was organized for the establishment of a Christian seaside resort, and that the corporation inserted the covenant in question in all deeds made by it in order that the place might be more desirable as a place of residence, and that the object of the corporation was to make it impossible for the city to be built up solid and to secure a space of eight feet between all buildings for the circulation of air and the preservation of view and fire protection for the enjoyment of all people, and that over seven thousand lots have been sold by the corporation, and that no lot has been sold without the covenant in question being embodied in the deed of conveyance. None of these averments are controverted.

It is also contended on behalf of defendant that there has been such a departure from the general scheme designed to be preserved by the restrictive covenant as to amount to a waiver of the right to its enforcement.

The record discloses that the territory extending from Eighth to Ninth street, in Ocean City, has, in recent years, become the business portion of the city. In that territory the covenant in question has been frequently violated. Some twelve buildings have been there erected in disregard of the covenant, some as to the front building line and some as to the side lines. But the amended bill alleges that the territory extending southwesterly from Ninth street to Fourteenth street, and from the ocean to the bay, in which territory there are now three hundred and eighty buildings, of which three hundred and thirty are residences, is essentially the residential portion of the city, and that in that territory the covenant has been preserved. The side lines of the lots in question are on Eleventh street, which street runs northwesterly and southeasterly from the ocean to the bay, and is approximately the centre of the territory referred to in the bill as the residential portion of the tract. The answering affidavits point out six buildings within the territory between Ninth and Fourteenth streets which are claimed to be located contrary to the requirements of the covenant. One of these is on Ninth street and another on Asbury avenue near Ninth street. These two buildings are approximately two blocks distant from com-

plainants' lots and are on other streets, and are adjacent to the territory which has been referred to as the business section of the city, and it is manifest that any violation of the covenant occasioned by these two buildings in no way affects the desirability of complainants' property. A third building referred to as between Ninth and Fourteenth streets is the Steward building, which building is located on the east corner of Twelfth street and Asbury avenue. It is averred that the porch posts of that building are flush with the side line of Twelfth street. As to this building it may be said that it is by no means certain that the location of the porch posts as pointed out operates as a violation of the covenant. But, without determining that question, it will be observed that the location of the Steward building, like the two buildings already referred to, is on streets other than that on which complainants' property is located, and is more than a block distant, and in no way affects the desirability of complainants' property. The fourth building pointed out by defendant's affidavits is at Twelfth street and Asbury avenue. This, like the other properties already referred to, is too distant from complainants' property to in any way affect its desirability. The fifth violation of the covenant referred to as within the residential district is one now under construction at Eleventh street and Bay avenue, which building is being erected on the line of Eleventh street. The map filed by defendant does not disclose Bay avenue. It is evident that this structure must be many blocks distant from complainants' property. The sixth violation of the covenant referred to as within the territory defined as residential is a building occupied by N. C. Clell—and which is situated on the corner of Eleventh street and Asbury avenue. This building fronts on a street in which complainants are not interested, but the side of the building is on the opposite side of the same street on which complainants' property is located, and one block oceanward thereof.

It is pointed out that the front of this building violates the covenant in question, and that at the side of the residence portion of the building brick steps lead from the building to the side line of the street, and the porch encroaches on the building

line. Complainants' property is in no way affected by the front encroachment, and while the porch and steps at the side of the building may operate to violate the covenant, it is manifest that any violation there may be is trivial in its nature.

This review of the testimony is made necessary to intelligently determine whether complainants' right to enforce this covenant against defendant has been lost. From the review it will be observed that there have been no violations of the covenant which have in any substantial way affected the property of complainants, and but two possible violations upon the streets on which complainants' lot is situated, and that but six violations of the covenant are alleged within a district in which three hundred and eighty buildings are erected.

I think it clear that the equitable right of complainants to enforce this restrictive covenant has not been lost. Even though it should be conceded that the twelve violations of the covenant which have been permitted in what has been defined as the business district northeasterly of Ninth street has amounted to an abandonment, in that district, of the original scheme designed to be preserved by the covenant, it does not follow from that fact that the right to the enforcement of the covenant for the preservation of the original scheme in a separate district where essentially different conditions prevail has been lost. Changing conditions, such as the growth of business interests, may well modify the needs of one portion of a city to such an extent as to induce the abandonment of the general plan as to that portion without any intentional abandonment of the plan as to territory where other and radically different conditions prevail. In this view I am unable to regard the breaches of the covenant in the territory northeasterly of Ninth street as evidence of an intention to abandon the preservation of the general plan in the residential portion of the city referred to.

As to the territory southwesterly of Ninth street, which has been defined as the residential district, I entertain the view that the six violations of the covenant pointed out by defendant cannot be considered as sufficient evidence to indicate the abandonment of the original plan in the district where nearly four

hundred buildings have been erected in conformity to the plan. The extremely small percentage of the breaches of the covenant which defendant has pointed out rather tends to the establishment of the fact that it has been the defined purpose of the property holders in that district to adhere to the preservation of the original plan sought to be preserved by the covenant.

I think it also clear that the equitable right of complainants to the enforcement of the covenant in question is not impaired by isolated breaches of the covenant in locations where such breaches can in no way be said to affect the desirability of complainants' property. It is not to be expected that the courts will be appealed to for the preservation of the general scheme in localities where a complainant is without interest. It is only when the interest of a property owner is affected that, in my judgment, he can be reasonably charged with the duty of applying to the court for the preservation of the general scheme. This view is forcefully expressed by Vice-Chancellor Emery, in *Morrow* v. *Hasselman,* *69 N. J. Eq.* (*3 Robb.*) *612,* and I concur in the conclusions there stated by the learned vice-chancellor.

It is also claimed, on behalf of defendant, that complainants are in laches in permitting the building of defendant to become partially erected before the bill was filed. I think complainants have done all that can be reasonably required of them. Defendant is not a resident of this state. Complainants promptly gave notice to the foreman of the work that their rights were being violated, and the bill was thereafter filed as quickly as it could be procured.

A preliminary injunction will be advised, in accordance with the prayer of the amended bill.