Complainant's bill seeks the specific performance of an agreement to purchase certain real estate. The defendant moves to strike the bill upon three grounds, viz.: That the bill fails to set forth an equitable cause of action; that the bill discloses that complainant's title to the real estate in question is not good and marketable; that the bill discloses that complainant's title to said real estate is of such doubtful validity and of such debatable quality as to disentitle the complainant to compel the defendant, as vendee, to accept the same.
The complaint alleges that Burt S. Morris died seized of the premises in question on December 16th, 1933. At the time of his death the premises were encumbered by a mortgage *Page 612 
held by complainant. Morris by his will devised his residuary estate (including the premises in question) to his wife, Mary A. Morris, and the Montclair Trust Company, in trust upon certain uses, namely, to keep the fund invested, to pay the wife a stated sum monthly during her lifetime, to apply a certain portion of the income to the support of a stepson, and to apply a certain other sum for the support and education of the children of a nephew, and upon the decease of the wife to divide the corpus
between six named beneficiaries and the children of one of those six. The executors and trustees were in the will given a power of sale. Only the wife qualified as executrix and trustee. After the testator's death the mortgage was foreclosed and the lands sold on August 10th, 1935, to the complainant. The sheriff thereafter conveyed the premises to the complainant.
Though not apparent on the face of the bill, for the purpose of the present motion, it is admitted by complainant that the foreclosure bill was filed January 19th, 1935; final decree entered May 29th, 1935, and the property sold by sheriff to Bank of Montclair July 30th, 1935. The sheriff reported the sale August 2d 1935, and it was confirmed August 10th, 1935.
It further appears by the bill of complaint that aside from the widow, Mary A. Morris, the beneficiaries under the residuary trust, were not made parties to the foreclosure action, and so the defendant refused to take title when complainant tendered its deed on June 1st, 1936. Thereupon the widow, Mary A. Morris, as executrix and trustee, agreed to sell to complainant for $50 "all right, title and interest in the lands and premises hereinabove described then vested in her as trustee, or in any of the beneficiaries named under the residuary trust created by the will of Burt S. Morris, deceased, which might not have been terminated or cut off by the mortgage foreclosure proceedings and the sheriff's sale above referred to." On June 16th, 1936, the orphans court confirmed said sale and directed the executrix to make conveyance, which she did. The sale and the confirmation thereof are sought to be justified under an earlier decree entered on July 16th, 1935, in the Essex county orphans court, declaring *Page 613 
the estate of Morris insolvent and directing the executrix
thereof to make sale of the whole or any part of the decedent's real estate. The decree confirming the executrix' sale was entered on June 16th, 1936, and was apparently intended to cure the defect resulting from the omission of the beneficiaries named under the residuary trust, who, the vendee claims were necessary parties in the foreclosure suit.
And I agree that the cestuis que trustent were necessary parties to the foreclosure action, since their omission left them possessed of a right to file a bill to redeem the property from the foreclosure sale. The decree in foreclosure served only as a bar to the right of the trustee. It did not bar the cestuis quetrustent, since they were omitted as parties to the suit. FirstNational Bank of Union City v. Leslie, 106 N.J. Eq. 564;151 Atl. Rep. 501.
Moreover, it is argued by the solicitor of the defendant that the orphans court was without jurisdiction to confirm the sale by the executrix, since by force of the decree of foreclosure and the sale held thereunder the entire interest of the executrix and trustee was cut off and her power of sale was exhausted. The Orphans Court act (section 81) provides that the lands, tenements, hereditaments and real estate of a decedent shall remain liable for the payment of his debts for one year after his decease and may be sold under an order of the orphans court of the county where the lands lie, providing the order of sale be obtained within one year from the time of death. The power thus conferred, it is contended, is limited to the legal estate whereof a decedent died seized and cannot be held to extend to a right to redeem vested in a cestui under a trust created in and by the decedent's will.
Both the legal estate of the testator and his equity of redemption terminated when the sale was held pursuant to the final decree in foreclosure. The right to redeem which resides in the omitted cestuis is, in my opinion, not an estate within the meaning of section 81 of the Orphans Court act and is therefore not capable of being sold under direction of the orphans court. The cestuis' right to redeem was at no time an asset in the hands of the executrix.
Where reasonable doubt exists touching the title of complainant *Page 614 
specific performance will be denied and decree refused if the title of the vendor cannot with certainty be pronounced free from doubt. Vice-Chancellor Leaming in Fisher v. Eggert,64 Atl. Rep. 957, held that if a title is to be forced upon a purchaser against his will, it should be a title that will enable him not only to hold the land "but to hold it in peace, and to sell it with reasonable certainty that no flaw or doubt will disturb its marketability." And Chancellor Runyon held inCornell v. Andrews, 35 N.J. Eq. 7; affirmed, 36 N.J. Eq. 321,
that: "The real question to be decided in this case is whether the title which the complainant offers is a marketable one. If it is such a title as would be questionable, the court ought not to force it on the unwilling purchaser, even though, in its opinion, it would, on litigation, be sustained. * * * It is quite clear that if this court were to compel the defendant to take the title in question, it would have no judicial certainty that he would not be subject hereafter to litigation to test before other tribunals, in direct proceedings, the very question which it would have decided in this suit. Much less could it be certain that he would not be embarrassed in disposing of the property to purchasers by the apparent defect of estate which he now urges in his defense. Under such circumstances, a decree of specific performance should be denied."
The late Vice-Chancellor Backes said in Burke v. Dorfan,101 N.J. Eq. 84; 137 Atl. Rep. 844, "it is the vendor's duty to sweep the house. Where the question of the marketability of a title, sought to be imposed upon a vendee, is reasonably debatable, in a court of justice, in point of law or fact, specific performance will be denied." And to the same effect areSmith v. Reidy, 92 N.J. Eq. 586; 113 Atl. Rep. 774, andSharpe v. Stretch, 98 N.J. Eq. 225; 130 Atl. Rep. 231.
The complainant's title as set forth in the bill of complaint, to say the least, is involved in doubt and should the vendee be compelled to take the same he would be exposed to the uncertainty, hazard of litigation and unmarketability of title which, tested by the cases herein cited, exonerates him from performance.
 The motion to strike is granted. *Page 615