58 N.J. Super. 251 (1959)
156 A.2d 46
FREDERICK W. MARGARITELL, PLAINTIFF,
v.
THE TOWNSHIP OF CALDWELL, A MUNICIPAL CORPORATION OF THE COUNTY OF ESSEX AND STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 12, 1959.
*253 Mr. Simon Kasdin, attorney for plaintiff.
Messrs. Lum, Fairlie & Foster (Mr. Warren E. Dunn, appearing), and Mr. Robert W. Brady, attorneys for defendant.
SCHERER, J.S.C.
Plaintiff seeks a judgment declaring him to be the owner of approximately 20 acres of vacant land in the Township of Caldwell, Essex County, New Jersey. He claims title by reason of certain deeds secured from persons alleged to be the owners of the equity of redemption in said property and who were not joined as parties defendant in the tax foreclosure action brought by the defendant township in 1940. The township counterclaims for the same relief, asserting that it holds title by virtue of the said tax foreclosure suit, in which the final decree was entered June 21, 1940. The problem to be resolved is whether the defendant's 1940 decree did bar and *254 foreclose the equity of redemption of all persons who had an interest in the land at the time the suit was started and judgment entered.
This land and a contiguous piece in the Borough of North Caldwell (which the plaintiff now owns) were formerly owned by Burt S. Morris, who died testate on December 16, 1933. He had owned it since 1926. His will, dated November 1, 1929, was probated in the Essex County Surrogate's Court on February 6, 1934. His heirs at law and next of kin, as disclosed in the petition for probate, were his wife, Mary A. Morris, and his brother, Watson D. Morris. Decedent left no children, nor issue of any deceased children. The will nominated the widow and the Montclair Trust Company as executors, and as trustees of the trust fund therein provided for. Only Mrs. Morris qualified, and she acted as sole executrix and trustee. The will directed that the entire residuary estate be held in trust, to pay a stipulated sum each month to the widow out of principal or income and, if after such payment there remained sufficient income for the purpose, a stipulated sum was to be paid each month to the testator's stepson. It was further provided that, if income still remained after these payments, it was to be set aside for the education of the children of the testator's nephew. Upon the death of Mrs. Morris, the principal of the trust fund was directed to be distributed among six persons, including the stepson, and if the latter was then dead his share was to go to his children, but the shares of any others who predeceased were to be divided among the survivors of the said six persons. There were other defeasance clauses not here important.
The records of the estate of Burt S. Morris in the Essex County Surrogate's Office were placed in evidence. These reveal that, on July 16, 1935, a "decree of insolvency" was entered which recited that the "estate of Burt S. Morris, deceased, is likely to be insolvent and the said Executrix is hereby directed to proceed as if the estate were insolvent." The "report of claims" filed in 1935 showed the estate to be *255 insolvent. In the course of the administration of the estate, the executrix was given authority by the County Court to sell certain lands, in an effort to raise money to pay debts, but the land involved in this suit was not among the tracts ordered to be sold. This 20-acre tract, which was listed among the estate's assets as being a 19-acre tract, was encumbered by two mortgages totalling approximately $18,000, and was appraised as having no equity. The final account of the executrix was filed on April 17, 1942 and disclosed that from the liquidation of all assets she had received the sum of $641.70, had disbursed $68.40, and had a balance on hand of $573.30. The Essex County Orphans' Court entered a judgment approving the account on May 26, 1942 and directed the distribution of the funds in the hands of the executrix to the undertaker and for commissions and counsel fees. General creditors received no dividend.
It thus clearly appears that at no time after Burt S. Morris' death were there funds or assets from which the trust created by the decedent's will could have been set up, and that the cestuis que trustent took nothing thereunder. Whatever rights they might have had were subject to the prior claims of Morris' creditors. When the tax foreclosure complaint was filed on January 29, 1940, approximately seven years after the testator's death, a decree of insolvency had been entered and the appraisal of the assets showed that there was actual insolvency.
The complaint in the tax foreclosure suit sought foreclosure of tax sale certificates held by the township for the years 1931 and 1932, and it was alleged that there were unpaid taxes due for the years 1933 through the first half of 1940. The total amount claimed was $1,620.18. Mary A. Morris, individually and as executrix and trustee of the estate of Burt S. Morris, was made a party defendant, but not the other persons who were the cestuis que trustent of the fund, named in the will. Various encumbrancers were also joined as parties defendant, including the holders of the two mortgages on the land. No defendant answered *256 or disputed the township's right to relief, and none appeared to redeem the property on the date set in the foreclosure proceedings.
Plaintiff's claim is that the failure to join the cestuis que trustent renders the foreclosure proceedings defective because, not having been made defendants, their equity of redemption was not cut off or barred. Plaintiff has secured and recorded deeds from all of the cestuis que trustent, purporting to convey to him their respective equities of redemption. It is by virtue of these conveyances that the plaintiff claims title to the land. He has offered to pay to the township the amount fixed by the final decree of June 21, 1940 as the amount then necessary to redeem, together with interest on this sum and such taxes as thereafter would have been assessed against the property by the township if it had not been removed from the assessment rolls by reason of the final decree in the tax foreclosure action. The testimony shows that the property now has a value greatly in excess of these amounts.
Defendant contends that its tax foreclosure proceedings were proper, and that any interests of the cestuis que trustent and their equities of redemption in the property were cut off and barred by the entry of the final decree. It points to the statute in force at the time of the foreclosure action, L. 1939, c. 151, sec. 1, effective July 1, 1939, which became N.J.S.A. 54:5-91.1 (renumbered as N.J.S.A. 54:5-87.6), providing as follows:

"54:5-91.1 Cestui que trust or cestuis que trustent not necessary party defendant in suit to foreclose liens or certificates
It shall not be necessary in prosecuting any suit to foreclose any municipal lien, tax title lien or tax title lien certificate or certificates to join as party or parties defendant any cestui que trust or cestuis que trustent of any interest, right, claim or title, held in, on or to the aliened premises or to any interest therein or thereon by a trustee or fiduciary for the benefit of such cestui que trust or cestuis que trustent, but any order or decree entered therein shall be as binding and effective as though they had been made parties to such suit or proceeding." (L. 1939, c. 151, p. 494, sec. 1.) *257 Section 2 of that statute provided that nothing contained in the act was to be deemed as indicating that prior to its passage it had been necessary to join such cestuis que trustent. The problem in this case arises because this statute was repealed by L. 1953, c. 51, sec. 38. Regardless of the repeal, plaintiff claims that the statute was unconstitutional and hence defendant's proceedings thereunder were ineffective to bar the right of redemption of the cestuis que trustent.
This is a proper case for the application of the declaratory judgment statute (N.J.S. 2A:16-50, et seq.). A similar case was before the court in National-Ben Franklin Fire Ins. Co. v. Camden Trust Co., 21 N.J. 16, 23 (1956), where the validity of a judgment in a tax foreclosure action was not in question, but construction of the judgment and its effect upon the plaintiff's rights was sought. Here, too, the judgment of 1940 is not challenged, but an adjudication of its effect upon the equity of redemption of the cestuis que trustent under the Morris will is requested.
Plaintiff argues that an unconstitutional statute gives no protection because it is void ab initio. See 60 Harv. L. Rev. 443 (1947); Wilentz v. Hendrickson, 135 N.J. Eq. 244 (E. & A. 1944); State v. Erie Railroad Co., 23 N.J. Misc. 203, 217 (Sup. Ct. 1945); In re Central R. Co. of New Jersey, 163 F.2d 44 (3 Cir. 1947), certiorari denied 332 U.S. 810, 68 S.Ct. 112, 92 L.Ed. 388 (1947). In view of the result reached, this contention need not be further pursued.
The plaintiff's argument that the statute, L. 1939, c. 151, is unconstitutional is based upon the holding in City of Newark v. Fidelity Union Trust Co., 137 N.J. Eq. 92 (Ch. 1943). There the court considered an application to strike an answer in a tax sale foreclosure suit which alleged that the defendant bank was the holder of legal title to the real estate for the benefit of the holders of participation certificates in a mortgage investment, but that the equitable title and beneficial interest in the premises was vested in *258 such holders and plaintiff had not joined them as parties defendant. The plaintiff contended that it was not necessary to join such persons as defendants, apparently relying upon R.S. 2:65-8.3 (L. 1938, c. 315), which the court cited in its opinion. The court denied the motion and stated, 137 N.J. Eq. at page 94:
"* * * It is doubted whether such legislative provision is constitutional where the statute does not contain a provision making it reasonably probable that notice of these proceedings will be communicated to the cestuis que trustent and where the provisions of the statute, if followed, would operate to divest the cestuis que trustent of their equitable right of redemption without an opportunity to be heard. Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446. That cestuis que trustent have an equitable title and cannot be barred of their right of redemption unless made parties is firmly established in this state by First National Bank of Union City v. Leslie, 106 N.J. Eq. 564; Pancoast v. Geishaker, 58 N.J. Eq. 537; Bank of Montclair v. Mallas, 120 N.J. Eq. 611."
The statute referred to above is R.S. 2:65-8.3, L. 1938, c. 315. This act is identical with L. 1939, c. 151, upon which the defendant relies in this case, except that the 1938 act refers to suits "to foreclose any mortgage or mortgages," whereas the 1939 statute refers to suits "to foreclose any municipal lien, tax title lien or tax title lien certificate or certificates." The court in the last cited case did not make a direct finding that the statute was unconstitutional, but resolved the problem by directing that the cestuis que trustent be made parties defendant "to appear in these proceedings by a representative group, notwithstanding R.S. 2:65-8.3." It should be noted that the statute cited in the opinion was not the applicable one, since it related to mortgage foreclosures and the suit was a tax foreclosure proceeding. This suit was brought in 1942, when L. 1939, c. 151, was in force, and it was this statute which contained the authority to omit the joining of the cestuis que trustent in tax foreclosure suits. From what has been stated above, it is clear that the plaintiff's contention that L. 1939, c. 151 was declared unconstitutional *259 by City of Newark v. Fidelity Union Trust Co., supra, is without merit.
Both in City of Newark v. Fidelity Union Trust Co., supra, and later in Paradiso v. Mazejy, 3 N.J. 110, 117 (1949), on the same subject, it appears that the courts' attention was not called to the rule that the right to redeem land sold for delinquent taxes is not an absolute right, but is dependent upon constitutional provisions or statutory grant. This rule is stated in City of Newark v. Yeskel, 5 N.J. 313, 316 (1950), as follows:
"* * * The right of redemption of land sold for delinquent taxes is not an absolute right but is dependent upon constitutional provisions or statutory grant. In the absence of any constitutional provisions respecting the right it exists only so far as specifically provided for by statute,"
citing Simonton, Tax Sales in New Jersey (2d ed., 1925), at page 84, where it is stated that neither the right to redeem nor the right to receive notice of redemption is an absolute right existing independently of statute, but occurs solely by legislative grace. See also, Keely v. Sanders, 99 U.S. 441, 25 L.Ed. 327 (1879); 54 A.L.R. 756 et seq. In City of Paterson, Mayor, etc. v. O'Neill, 32 N.J. Eq. 386 (E. & A. 1880), the court approved a statute relating to tax foreclosure which required that the purchaser at a tax sale give notice to the owner, but not to the mortgagee, stating that this was a matter of legislative discretion. The decision of the trial court in the case, sub nom. O'Neill v. Dringer, 31 N.J. Eq. 507 (Ch. 1879), was reversed.
It is clear therefore that the Legislature has power to limit the class of persons who are required to be joined as parties defendant in a tax foreclosure suit. The argument that such a statute is unconstitutional is not supported by the cases. The law is well settled that the court will not pass judgment upon the wisdom of the Legislature in enacting a law, but will only ascertain if it has kept within its powers. State v. Garden State Racing Ass'n, 136 N.J.L. 173 (E. & A. 1947). Clearly, the Legislature, in enacting *260 L. 1939, c. 151, did not exceed its powers. Compare the notice given under the statute with that now provided for in N.J.S.A. 54:5-104.29 et seq., the In rem Tax Foreclosure Act, declared constitutional in City of Newark v. Yeskel, supra. Cf. R.R. 4:82-7.
The statute here in question was before this court in Heward v. Hyde, 3 N.J. Super. 492 (Ch. Div. 1949), but, since the cestuis que trustent there had an interest only in a mortgage held by the trustee, rather than in the lands themselves, the court was not called upon to decide the issue. Fidelity Union Trust Co. v. Gerber Bros. Realty Co., Inc., 123 N.J. Eq. 511 (Ch. 1938); Paradiso v. Mazejy, supra.
It is further interesting to note that, despite the comment of the court in City of Newark v. Fidelity Union Trust Co., supra, the statute there cited was specifically saved from repeal in the 1951 revision of Title 2 by N.J.S. 2A:50-14, and was re-enacted as N.J.S. 2A:50-15. Thus, the statute dispensing with the joinder of the cestuis que trustent in mortgage foreclosure actions still remains in full force and effect, and no challenge to its constitutionality appears to have been advanced since City of Newark v. Fidelity Union Trust Co., supra.
The subsequent repeal of N.J.S.A. 54:5-91.1 (L. 1939, c. 151) did not affect the validity of acts done pursuant to, and in reliance upon, it. N.J.S.A. 1:1-11, 15. This rule is well established and one of long standing in this State. See Hunt v. Gulick, 9 N.J.L. 205, 208 (Sup. Ct. 1827), where the court pointed out that the repeal of a statute could not destroy a civil right acquired thereunder. To the same effect is Town of Belvidere v. Warren R.R. Co., 34 N.J.L. 193, 195 (Sup. Ct. 1870), affirmed sub nom. Warren R.R. Co. v. Town of Belvidere, 35 N.J.L. 584, 587 (E. & A. 1871), where the court said that the repeal of a statute cannot invalidate a proceeding which was fully perfected while the statute was in force. In Williamson v. N.J. Southern R.R. Co., 29 N.J. Eq. *261 311, 334 (E. & A. 1878), it was stated that words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot otherwise be satisfied. The repealer here contains no words indicating an intent that it should have retrospective operation, nor that the legislative intent cannot be satisfied except by such operation. The title of the repealing statute, L. 1953, c. 51, is "An Act concerning taxation, and revising parts of the statutory law." The specific repealer is found in section 38, which states only that "Section one of chapter one hundred fifty-one of the laws of one thousand nine hundred and thirty-nine is hereby repealed."
While the repealing statute is silent as to the reason for its enactment, it is quite probable that its purpose was to eliminate statutes rendered ineffective by the passage of N.J.S.A. 54:5-104.29 et seq., the In Rem Tax Foreclosure Act. Thus, L. 1939, c. 151, could properly have been considered repealed by implication by that statute, even if L. 1953, c. 51, had not been passed.
The defendant's tax foreclosure proceedings were prosecuted in accordance with the statute then in effect, and they completely foreclosed and barred the equity of redemption of the cestuis que trustent under the will of Burt S. Morris. The deeds given by them to the plaintiff were ineffective to transfer any title to him. This being so, plaintiff has no right of redemption. In order to redeem land from tax sale, the person claiming the right to redeem must have a lawful right or interest in the property. Jefferson v. Davis, 25 N.J. Super. 135 (Ch. Div. 1953). The defendant has a vested title in fee simple in said lands, free and discharged of any claim on behalf of the plaintiff or the cestuis que trustent under the Morris will. This finding makes it unnecessary to discuss the defenses of laches, estoppel, unjust enrichment, and title by adverse possession.
A judgment may be presented in accordance with these conclusions.